JERRY E. SMITH, Circuit Judge:
James Guedry and David Burke appeal the denial of their motion for summary judgment based on qualified and official immunity from Derrick Newman’s 42 U.S.C. § 1983 excessive-force and state-law claims. We dismiss the appeal for want of jurisdiction on account of our finding material those facts the district court determined to be in genuine dispute.
I.
Late one night in August 2007, Officer Jason Torres pulled Willie Cole (‘Willie”) over for failing to yield to oncoming traffic while making a lefthand turn in Beaumont, Texas.[1] Torres approached the car and asked Willie, as well as Newman, who was the passenger in the front seat, and Mario Cole (“Mario”), in the back seat, for identification. Upon checking with dispatch, Torres learned that Mario had an outstanding warrant for unpaid traffic tickets.
Torres and Officer John Brown, who had arrived as backup, asked Mario to step out of the car and proceeded to handcuff him. Although allowing himself to be handcuffed, Mario yelled and cursed and made it difficult for the officers to search him and put him into the squad car. While Mario was struggling, Newman and Willie stepped out of Willie’s car and urged Mario to “chill out” and comply with the officers’ commands. Although the officers instructed them to stay in the car, they remained outside. Standing in the open doorway on the front passenger side, Newman raised his hands, palms open, while talking with Mario, then turned to lean against the car and placed his hands on its roof.
While restraining Mario, Torres radioed dispatch to ask for additional backup. Dispatch “coded” the channel, which locked all other radio traffic off the channel and allowed officers en route to hear what was going on. Responding officers could hear Mario yelling and cursing in the background.
Officer Charles Duchamp and his trainee, Guedry, arrived at the scene just as Torres and Brown were putting Mario into Torres’s car. Duchamp approached Willie as Guedry walked up to Newman, taser *760 drawn. Guedry reholstered his taser as he ordered Newman to the rear of the car; Newman complied, consenting to a protective pat-down search.
The parties dispute how the pat-down unfolded. Newman alleges that after Guedr/s hand remained on Newman’s crotch for an uncomfortable length of time, he informed Guedry, “Ain’t nothing there but nuts. You acting like you trying to get them.” At that point, Newman alleges, Guedry shoved him in the back. Guedry contends that Newman grabbed Guedr/s hand, placed it on his privates, and said “Get you some of that.” Guedry further contends that Newman refused two commands to “let go of my hand,” so Guedry pushed him forward. The videotapes neither contradict nor confirm either account.
Seeing Guedry push Newman forward onto the car, Burke, who had arrived just after Guedry, strode toward Newman. Burke planted his left foot between Newman’s feet, pushed Newman forward onto the car with his hip and forearm, and proceeded to strike Newman’s arm with his baton. After five strikes at his upper right arm, Newman stepped back. Burke replanted his feet and struck Newman five more times on the arm. Newman’s shorts fell down, and Burke hit him three more times on his exposed right thigh. Burke struck Newman a total of thirteen times in about nine seconds, during which, Newman alleges, neither officer gave him any command with which he failed to comply.
Burke reholstered his baton as someone yelled, “taser, taser, taser.” Guedry tased Newman, and tased him again before Newman fell to the ground.[2] Guedry then tased Newman a third time. Newman rolled onto his stomach, yelling “ok, ok, I didn’t do nothing, sir, I didn’t do nothing.” The officers then handcuffed Newman; Guedry dragged him by the arm to the sidewalk; Newman waited, lying prone with his shorts around his ankles, for emergency medical personnel to remove the taser barbs from his skin. Again, Newman alleges, he was not given any commands with which he failed to comply.
II.
Newman sued in state court, alleging various state-law claims against all five officers. After he amended his petition to include claims against each officer for use of excessive force in violation of the federal Constitution under 42 U.S.C. § 1983, defendants removed to federal court.[3] Each defendant — Guedry, Burke, Torres, Duchamp, and Brown — moved for summary judgment on all state-law claims on the ground of official immunity and on the § 1983 claim on the basis of qualified immunity. The district court granted summary judgment to Torres, Duchamp, and Brown, finding that Newman had not shown any evidence that they had a reasonable opportunity both to realize that excessive force was being used and to intervene to stop it.[4] The court denied sum *761 mary judgment to Guedry and Burke, concluding that there were issues of material fact as to whether the force used by the officers was clearly excessive and objectively unreasonable.
III.
Under the collateral-order doctrine, this court has jurisdiction to hear a defendant’s immediate appeal of the denial of a motion for summary judgment based on qualified immunity “to the extent that the appeal turns on a question of law.” Freeman v. Gore, 483 F.3d 404, 410 (5th Cir.2007). Where the district court has found that a material issue of fact exists, we have jurisdiction to review the materiality, but not the genuineness, of the factual dispute. Id. That is, we “can consider the legal sufficiency of the facts that the district court found to be supported by the summary judgment record.” Id.
We review a summary judgment de novo, “using the same standard as that employed by the district court under Rule 56.” Kerstetter v. Pac. Scientific Co., 210 F.3d 431, 435 (5th Cir.2000). Summary judgment is appropriate “if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(a).
When reviewing a summary judgment, we “must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.” Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir.2009). Even so, “we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene.” Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir.2011) (citing Scott v. Harris, 550 U.S. 372, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)). When one party’s description of the facts is discredited by the record, we need not take his word for it but should view “the facts in the light depicted by the videotape.” Scott, 550 U.S. at 380-81, 127 S.Ct. 1769.
A.
As public officials, Guedry and Burke (“the officers”) are entitled to qualified immunity on Newman’s § 1983 excessive-force claim unless (1) Newman has “adduced sufficient evidence to raise a genuine issue of material fact suggesting [their] conduct violated an actual constitutional right,” and (2) the officers’ “actions were objectively unreasonable in light of clearly established law at the time of the conduct in question.” Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir.2008). Although qualified immunity is “nominally an affirmative defense,” the plaintiff bears a heightened burden “to negate the defense once properly raised.” Id.
To prevail on his Fourth Amendment excessive-force claim, Newman must establish “(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the exces-siveness of which was clearly unreasonable.” Tarver v. City of Edna, 410 F.3d 745, 751 (5th Cir.2005). Claims of excessive force are fact-intensive; whether the force used was “clearly excessive” and “clearly unreasonable” depends on “the facts and circumstances of each particular case.” Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Some relevant considerations include “the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight.” Id.
*762 We do not judge the reasonableness of the officers’ use of force from the safety of our chambers or “with the 20/20 vision of hindsight” but rather “from the perspective of a reasonable officer on the scene .... ” Id. Our inquiry is “whether the officers’ actions [we]re ‘objectively reasonable’ in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.” Id. We examine each officer’s actions independently to determine whether he is entitled to qualified immunity. Meadours v. Ermel, 483 F.3d 417, 421-22 (5th Cir.2007).
1.
The officers contend that their use of force was objectively reasonable. They assert that Newman resisted search and arrest, that he struggled and was noncom-pliant, that he reached for his waistband, potentially for a weapon, and that their actions were necessary to prevent serious injury or death to themselves. Newman denies that he resisted the officers or failed to comply with any commands. He alleges that the officers used force in response to nothing more than an off-color joke. Mindful that we are to view the facts in a light most favorable to Newman, and seeing nothing in the three video recordings to discredit his allegations, we conclude, based only on the evidence in the summary-judgment record, that the use of force was objectively unreasonable in these circumstances.
As to the severity of the underlying crime, Willie, not Newman, was pulled over for a mere traffic violation. Mario, not Newman, was arrested for unpaid parking tickets. On appeal, the officers assert that Newman violated Texas Penal Code § 38.03 — Resisting Arrest, Search, or Transportation — because a “struggle ensued,” and Guedr/s pat-down search was “never completed.”[5] Contrary to the officers’ contentions, however, the “undisputed” facts do not demonstrate that Newman resisted search and arrest. On Newman’s account, the search was never completed, because the officers shoved, hit, and tased him after he made an off-color joke. Newman denies that he grabbed Guedry’s hand, and the videotapes, which do not show Newman’s right hand at the time in question, do not contradict him.
The officers’ theory that they were trying to prevent serious injury or death to themselves is severely overwrought. The videos do not show Newman attempting to strike either officer, holding a weapon, or even reaching for his waistband. The officers did not try to warn each other or the other officers that Newman had a weapon, which might be expected if either officer truly thought that at the time. The officers were obviously already behind Newman, pushing him down onto the trunk of the car, before Burke began swinging his baton. Although “traffic stops may be dangerous encounters,” Maryland v. Wilson, 519 U.S. 408, 413, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997), and officers must have the discretion to make hard decisions in situations that are “tense, uncertain, and rapidly evolving,” Graham, 490 U.S. at 397, 109 S.Ct. 1865, the particular facts of this encounter did not justify treating *763 Newman as a serious threat, at least at the summary-judgment stage.
No one contends that Newman attempted to flee. The officers maintain that their use of force was appropriate, because Newman struggled and was noncompliant. But, on Newman’s account, he was never given any commands that he disobeyed. Duchamp, who was standing near the officers, testified that he did not recall their giving Newman any commands before striking him. In his deposition, Burke clarified that by “struggle” he meant that Newman was pushing himself off from the car and back onto the officers. Newman also failed to “comply” with Burke’s first ten baton strikes by pushing off the car. After the blows to his leg, Newman’s body failed to comply, according to Burke, by not falling to the ground. Even on the officers’ version of events, Newman’s behavior did not rise to the level of “active resistance.”
Although officers may need to use “physical force ... to effectuate [a] suspect’s compliance” when he refuses to comply with commands during a traffic stop, Deville, 567 F.3d at 167, the officers still must assess “the relationship between the need and the amount of force used,” id. In Deville, we held that a reasonable jury could find that the degree of force used was not justified where the officer “engaged in very little, if any, negotiation” with the suspect and “instead quickly resorted to breaking her driver’s side window and dragging her out of the vehicle.” Id. at 168. If Newman’s allegations are true, the officers immediately resorted to taser and nightstick without attempting to use physical skill, negotiation, or even commands. Viewing the summary-judgment facts in a light most favorable to Newman, we conclude that the use of force was objectively unreasonable.
2.
The officers maintain that their conduct was not objectively unreasonable in light of clearly established law at the time of the incident. “[T]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.” Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). “The central concept is that of ‘fair warning’: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.” Kinney v. Weaver, 367 F.3d 337, 350 (5th Cir.2004) (internal quotations and citation omitted). It is beyond dispute that Newman’s right to be free from excessive force during an investigatory stop or arrest was clearly established in August 2007. See, e.g., Deville, 567 F.3d at 169; Tarver, 410 F.3d at 753-54.
Guedry contends that he had no reasonable warning that tasing Newman multiple times violated Newman’s constitutional rights, because there was then no binding caselaw on the appropriate use of tasers.[6] Lawfulness of force, however, does not depend on the precise instrument used to apply it.[7] Qualified im *764 munity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel.
Furthermore, “in an obvious case,” the Graham excessive-force factors themselves “can ‘clearly establish’ the answer, even without a body of relevant case law.” Brosseau v. Haugen, 543 U.S. 194, 199, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004). None of the Graham factors justifies Guedr/s tasering Newman. As noted above, on Newman’s account, he committed no crime, posed no threat to anyone’s safety, and did not resist the officers or fail to comply with a command.[8] Therefore, taking the facts in the light most favorable to Newman at the summary-judgment stage, the officers’ conduct was objectively unreasonable in light of clearly established law at the time of the incident.
B.
As governmental employees, the officers are entitled to official immunity on Newman’s state-law claims for “(1) the performance of discretionary duties (2) that are within the scope of the employee’s authority, (3) provided that [they] act[ ] in good faith.” Telthorster v. Tennell, 92 S.W.3d 457, 460-61 (Tex.2002). The only dispute is whether the officers acted in good faith. On the facts before us on summary judgment, they did not.
“Texas law of official immunity is substantially the same as federal qualified immunity.” Wren v. Towe, 130 F.3d 1154, 1160 (5th Cir.1997); see also Haggerty v. Tex. S. Univ., 391 F.3d 653, 658 (5th Cir.2004). An officer acts in good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that the facts justified his conduct. City of Lancaster v. Chambers, 883 S.W.2d 650, 656-57 (Tex.1994). Like the federal standard from which it is derived, Texas’s good-faith test is one of objective legal reasonableness. Id. at 656. Because the officers’ use of force was not objectively reasonable, it was not in good faith, so the officers are not entitled to official immunity on Newman’s state-law claims.
Under the applicable law, we have no jurisdiction to review a district court’s determination that there are genuine disputes of fact where we have decided, as a matter of law, that those factual issues are material. See, e.g., Juarez v. Aguilar, 666 F.3d 325, 331 (5th Cir.2011). The appeal, accordingly, is DISMISSED for want of jurisdiction. We rule only on the state of the summary-judgment record, and we express no view on the ultimate facts that may be determined at trial or on the ultimate merits of any claim.

. The facts are from what is seen and heard on three police videos of the incident, especially from Torres's dash camera ("the Torres tape”) and from other competent summary-judgment evidence.

. Although defendants, in their answer, motions for summary judgment, and appellate briefing have consistently stated that Guedry tased Newman twice, Guedry testified in his deposition that he tased three five-second bursts.

. Newman amended his complaint, alleging that Police Chief Frank Coffin, City Manager James Harris, and the City of Beaumont had established a "zero tolerance policy” that was unconstitutionally directed at citizens such as Newman. He alleged that certain areas of Beaumont were designated "high crime areas,” in which officers were required to issue citations for even minor offenses, and that those areas were disproportionately located in the poorer south end of Beaumont. The district court dismissed the complaint as time-barred, and this court affirmed. Newman v. Coffin, 464 Fed.Appx. 359 (5th Cir.2012) (per curiam).

.Newman filed a notice of appeal from the order dismissing the three, but we dismissed the appeal for want of jurisdiction. Newman *761 v. Dunchamp [sic], No. 11-41252 (5th Cir. Mar. 8, 2012).

. The officers also suggest that Newman violated Texas Transportation Code § 565.05 by failing to comply with Torres's order to get back into Willie’s car. Presumably the officers are referring to Texas Transportation Code § 542.501 — Obedience Required to Police Officers and to School Crossing Guards— given that, to our knowledge, there is no Chapter 565. In any event, Newman’s failure to get back into the car is not relevant to the question of qualified immunity: We must consider the circumstances confronting the officers specifically. Neither of them consulted with Torres or Brown when they arrived at the scene almost 2)4 minutes after Newman had disobeyed Torres’s command.

. Burke also contends that a reasonable officer in his position could have made a reasonable mistake of law regarding the constitutionality of his use of the baton. He cites no authority for that argument, which fails for the same reason Guedry’s does: None of the Graham factors supports Burke's use of force in this case. Nothing in this opinion, however, should be read as a prohibition on the use of tasers or batons where objectively reasonable.

. See Spann v. Rainey, 987 F.2d 1110, 1115—16 (5th Cir.1993) (use of flashlight, hands, and nightstick); Peterson v. City of Fort Worth, *764 Tex., 588 F.3d 838, 846 (5th Cir.2009) (hard knee-strike).

. See also Anderson v. McCaleb, 480 Fed.Appx. 768, 773 (5th Cir.2012) (per curiam) (deciding that based on Graham factors, the officer "should have known that he could not continue to shock [the suspect] with the taser after he was no longer resisting arrest”); Massey v. Wharton, 477 Fed.Appx. 256, 263 (5th Cir.2012) (per curiam) (stating that where none of the Graham factors supported officer’s using his taser twice and pepper spray once, "no reasonable officer would believe the force used ... to be reasonable”); Autin v. City of Baytown, Tex., 174 Fed.Appx. 183, 186 (5th Cir.2005) (per curiam) (opining that nothing "would have indicated to a reasonable officer that repeatedly tasing a woman while forcing her to the ground was lawful conduct” where none of the Graham factors supported the officer).