EDITH H. JONES, Circuit Judge,
dissenting.
With respect to my colleagues, I must dissent to the extent the majority opinion denies qualified immunity to Officer Martinez for his alleged use of unconstitutionally excessive force against arrestee Ramirez. Between this opinion and another recently issued in this court, Newman v. Guedry, 703 F.3d 757 (5th Cir.2012), we seem to have departed from the Supreme Court’s clear and repeated statements regarding qualified immunity for law enforcement officers.
In brief, the Supreme Court has held that given the perilous circumstances under which much law enforcement work is carried out and the inevitable need for split-second decisions, a plaintiff must overcome two levels of unreasonableness to get to the jury on a claim for a Fourth Amendment violation. Saucier v. Katz, 533 U.S. 194, 204-05, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001); Anderson v. *381 Creighton, 483 U.S. 635, 640-44, 107 S.Ct. 3034, 3039-41, 97 L.Ed.2d 523 (1987). The plaintiff must first create a genuine issue of material fact that the force used under the circumstances was objectively unreasonable. Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989). He or she must additionally show a genuine, material fact issue that the law was so “clear,” under reasonably analogous circumstances confronted by the officer, that “no reasonable officer” would have used that quantum of force. Brosseau v. Haugen, 543 U.S. 194, 201, 125 S.Ct. 596, 600, 160 L.Ed.2d 583 (2004) (reversing the Ninth Circuit and awarding qualified immunity following police shooting of suspect). The standard thus shields all but the plainly incompetent officers or those who knowingly violate the law. Anderson, 483 U.S. at 638, 107 S.Ct. at 3038. The standard also explicitly operates to “protect officers from the sometimes ‘hazy border between excessive and acceptable force.’ ” Saucier, 533 U.S. at 206, 121 S.Ct. at 2158 (citation omitted).
What this court’s recent decisions seem to suggest, however, is that officers can be liable even if they are well within that hazy border. Saucier explains why this is •wrong:
If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed.
The concern of the [qualified] immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct.... An officer might correctly perceive all of the relevant facts but have a mistaken understanding as to whether a particular amount of force is legal in those circumstances.
Graham and Anderson refute the excessive force/probable cause distinction on which much of respondent’s position seems to depend. The deference owed officers facing suits for alleged excessive force is not different in some qualitative respect from the probable-cause inquiry in Anderson. ... The same analysis is applicable in excessive force cases, where in addition to the deference officers receive on the underlying constitutional claim, qualified immunity can apply in the event the mistaken belief was reasonable.
Id. at 205-06, 121 S.Ct. at 2158-59. In Saucier, the Ninth Circuit was reversed, and qualified immunity held appropriate as a matter of law, where police roughly removed the defendant, a suspect, from the scene of a U.S. Vice Presidential speech, jostled his leg that had a brace on it, and shoved him into a trailer for awhile. The Court held that any mistake the officers made was, under the circumstances, reasonable, despite the fact that, as it earlier noted, “there is a dispute whether he did so to resist.” Id. at 198, 121 S.Ct. at 2154.
Compare Saucier to the facts at issue here. The officers arrived at Ramirez’s landscaping business to serve an arrest warrant on his sister-in-law. When Ramirez came on the scene, he began arguing with Officer Martinez. Martinez ordered him to turn around and submit to handcuffing. As the majority opinion initially describes the summary judgment evidence,
Ramirez did not comply. Martinez grabbed Ramirez’s hand and told him to turn around, but Ramirez pulled his arm away. Martinez immediately tased Ramirez in the chest. Ramirez testified that he did not resist after he pulled his arm away.
Later on, the majority concludes that because Ramirez pulled his arm away, Offi *382 cer Martinez could reasonably believe that he was resisting arrest in violation of Texas law. The majority opinion barely notes that Martinez interpreted Ramirez’s “pulling away” as raising his arm in order to attempt to punch him, and that is why Martinez tased the arrestee. Given Ramirez’s heated reaction and refusal to comply with Martinez’s order, Martinez could have “reasonably, but mistakenly, believed that [the] suspect was likely to fight back” and Martinez “would be justified in using more force than in fact was needed.” Saucier, 533 U.S. at 205, 121 S.Ct. at 2158.
The possible distinction between this case and Saucier is that Ramirez was tased once more as he allegedly lay on the ground while handcuffed. Fortunately, the majority does not treat this case as an indictment of the use of tasers, but rather an incident that must be considered in totality through the lens of Ramirez’s self-serving testimony.[1] But as I have noted, Saucier found qualified immunity appropriate even though there was a factual dispute concerning the suspect’s degree of resistance.
The totality of circumstances in Saucier furnishes strong support for granting qualified immunity as a matter of law here. First, there was reasonable cause to believe Ramirez violated Texas law. Second, Ramirez admits he resisted handcuffing and pulled his arm away, and thus actively resisted arrest. Third, Saucier reiterates that the right to make an arrest “necessarily carries with it the right to use some degree of physical coercion or threat thereof.” Id. at 208, 121 S.Ct. at 2160 (quoting Graham, 490 U.S. at 396, 109 S.Ct. at 1872). Fourth, as in Saucier, the degree of force used here could not have been extreme; the majority opinion refers only to Ramirez’s claims of cuts and bruises, taser burn marks, and temporary pain. Finally, the entire confrontation lasted about a half minute and included scuffling after Ramirez was on the ground. Officer Martinez had to react instinctively to a “tense, uncertain, and rapidly evolving” situation. Graham, 490 U.S. at 397, 109 S.Ct. at 1872.
Balancing all these circumstances, a jury could not find that no reasonable officer would have tased Ramirez two times. Even if Officer Martinez made a mistake on the second tasing, Saucier, echoing the line of consistent Supreme Court precedent, should shield his reasonable but mistaken conduct from suit as well as liability.[2]
The majority’s principal authorities are Newman, supra, and Bush v. Strain, 513 F.3d 492 (5th Cir.2008). Newman, as I have said, appears to suffer from flawed analysis like this opinion. Bush, however, is inapposite because it represents a far more extreme alleged use of force. The Supreme Court has cautioned against applying the tests for excessive force and qualified immunity at too high a level of generality. Brosseau, 543 U.S. at 198, 125 S.Ct. at 599. The plaintiff in Bush was a female detained for simple battery and resisting arrest, whose face was allegedly shoved into the rear window of an auto after she had been handcuffed. Unlike Ramirez, she suffered injuries to her face, *383 teeth, and jaw and incurred sizable medical expenses as a result. There is no one-size fits all standard requiring resisting-arrest excessive force claims to be tried.
Although I deplore official misconduct as much as does the majority, the bars to holding law enforcement officers personally liable for damages are necessarily and properly high. Taking this case to a jury, in my view, significantly erodes the protection of qualified immunity. I respectfully dissent.

. This court has not often or in detail discussed the use of tasers to subdue suspects. Although the decision is inapposite to this case, Draper v. Reynolds, 369 F.3d 1270, 1278 (11th Cir.2004), indicates that in some confrontations the use of a taser may well be preferable in effecting arrests because it reduces the uncertainties and dangers surrounding hands-on tactics.

. From this discussion, it follows that I would also grant immunity from Ramirez's state law claims because Texas law parallels the federal standards.