# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 6, 2021

Lyle W. Cayce
Clerk

No. 19-40286

Calvin Amos,

*Plaintiff—Appellant*,

*versus*

Denise Jefferson, *Corporal*; Bob Page, *Warden*; S. Walker, *Captain*; Jermetras Willis, *Nurse*; C. Story, *Nurse*; Michelle Arnold, *Nurse*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:17-CV-195

Before Owen, *Chief Judge*, and Smith and Graves, *Circuit Judges*.

Per Curiam:*

Calvin Amos, Arkansas prisoner # 113174, appeals the award of summary judgment to the defendants on his Eighth Amendment claims of excessive force and deliberate indifference to his medical needs. He argues

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 19-40286

that the court improperly decided disputed issues of material fact when it granted summary judgment.  He also moves for the appointment of counsel. We affirm summary judgment and deny Amos's motion for appointment of counsel.

## I

Amos brought this pro se 42 U.S.C. § 1983 suit, naming as defendants Corporal Denise Jefferson, Warden Bob Page, Captain Sherdona Walker, and Nurses Jermetras Willis, Charlotte Story, and Michelle Arnold—Arkansas Department of Corrections employees involved in his care and custody.

Because context is especially important in excessive force cases, we recount the facts in detail.[1]  A video recording sheds light on the events in question.  According to Jefferson's affidavit and reports from the use-of-force investigation, the video begins shortly after an administrative hearing in which Jefferson, as the hearing officer, ruled against Amos on an unrelated infraction, which caused Amos to become disgruntled and to request suicide watch.  Amos then becomes physically resistant, defiant, and belligerent, hurling threats and derogatory sexual remarks towards Jefferson.  This behavior prompts Jefferson and other officers to escort Amos back to his cell, and he continues to be hostile and combative along the way.

Once officers return Amos to his cell, as part of the suicide watch protocol, they begin removing his clothes.  Before Amos's pants are removed, Jefferson orders the officers to position Amos so that he is facing the wall.  The officers do so, but Amos turns his head and shoulders sideways while laughing and calling Jefferson a "scary ass ho."  In response, Jefferson

---

[1] *See Lombardo v. City of St. Louis*, ___ S. Ct. ___, 2021 WL 2637856, at *2 (2021) (per curiam) (emphasizing "the careful, context-specific analysis required by this Court's excessive force precedent").

orders Amos to face the wall and warns that he will be sprayed with a chemical agent if he does not comply. Amos then turns his head and body to face the wall and says, "Order this d_ _ k in your mouth." As Amos remains facing the wall, the officers have trouble removing his shirt because he is handcuffed, which prompts Jefferson to instruct the officers to uncuff one hand. The officers do so, and Amos's shirt is removed while his head and body continue to face the wall.

Amos's head and body then turn perpendicular to the wall as the officers reapply the handcuff. The officers appear to have guided Amos's body into that position, with one of the officers placing a hand on Amos's shoulder and arm as Amos turns. With Jefferson watching from a few steps away, Amos's head and body remain perpendicular to the wall for about five seconds while the officers continue to reapply the handcuff. With his body still perpendicular, Amos then turns his head and looks at Jefferson for about another two seconds. Jefferson then says, "Didn't I tell you to turn around and face the wall," and an instant after Amos turns his head away from Jefferson, she administers a spray of chemical agent that primarily hits the right side of Amos's head and face. The spraying lasts for one to two seconds. Three officers were still reapplying the handcuff and holding Amos at the time. Jefferson reports the time as 16:43 and indicates that Amos was advised several times to face the wall and that the spray was the result of his refusal to do so. Officers then leave the cell, and Amos uses the shower in his cell to decontaminate himself.

After visiting the medical office, where nurses measure Amos's oxygen level, advise him to continue to run water through his eyes and face, and clear him to return to his cell, officers escort Amos to a separate holding cell while his cell is decontaminated. While officers lead Amos to that holding cell, Amos resumes his belligerence, cursing at Jefferson and stating, "I should make your bitch ass spray me again before you go home." Inside

the holding cell, Jefferson orders Amos to sit down on a bench at the back wall of the cell. Amos refuses momentarily, yelling, "A m_ _ _ _ _ _ _ _ _ _r can't make me do a god damn thing, ho," but then sits down. Jefferson then tells Amos, "Stay seated till all officers exit the cell or you will be sprayed with chemical agent." Amos, handcuffed, held by three officers, and with eyes closed, responds, "As if I give a f_ _ _k." When the last two officers release their hold of Amos and walk toward the exit of the cell, a few steps away from where Amos is seated, Amos stands up with his eyes still appearing to be closed. He lurches forward about half a step but remains near the back wall, and the last officer is about one step from the doorway of the cell. Jefferson then sprays Amos in the face, shoulder, and back with chemical agent for one or two seconds, stating, "I told you to have a seat until all officers leave." Amos responds that he thought they were already gone. The cell door is then closed with Amos inside, and Jefferson announces that the time is 17:07 and that Amos was sprayed for refusing to stay seated until all officers exited the cell.

After the door is closed, Amos paces around the cell with his eyes closed while wincing and coughing and eventually lies down on the floor until officers and a nurse enter the cell. The officers pick him up and bring him to the medical office. As they do so, Amos remains belligerent toward Jefferson, stating that she would have to spray him one more time and that he was trying to die that day. Amos falls to the ground upon entering the medical office, and officers pick him up and place him into a chair, at which time Amos comments that he deserved the first spray but not the second one. As Amos takes heavy breaths and states that he cannot breathe, a nurse checks Amos's oxygen level and determines that it is 98%. The nurse advises Amos to use water when he is back in his cell, and Amos responds that he needs water immediately. Announcing the time of 17:14, Jefferson remarks that the nurse has cleared Amos to go to his cell.

Amos is then escorted back to the holding cell while officers continue to decontaminate his original cell. Amos remains in the holding cell for approximately five minutes until he is again led back to that cell. Along the way, Amos remarks to another inmate, "I made the bitch spray me again. I'm thinking about round three now, you hear me?" Officers then secure Amos in his cell, where he is free to shower to decontaminate, and the video ends.

Amos avers that Jefferson's conduct constituted unlawful excessive force. Amos maintains that he was in compliance with orders and was not in range to harm Jefferson when she administered the sprays; Jefferson knew that the chemical agent posed a substantial risk to him because he earlier told her that it would cause him to have an allergic reaction; Jefferson encouraged the nurses not to treat him after the sprays; an internal investigation of Jefferson's conduct resulted in her being demoted from lieutenant to corporal and transferred to another facility; and Jefferson had a history of intentional and reckless indifference to Amos.

Amos claims that Nurses Willis and Story refused after both sprays to provide him the medical attention he needed and that they conspired with Jefferson after Jefferson told them that Amos should not be treated because he did not know how to treat women. Amos alleges that he told Willis and Story that his cell lacked running water but that they nonetheless advised him to use the water in his cell to decontaminate, refused his request to use the eye wash station in the medical office, and refused to treat his right ear or flush out the chemical agent that was inside.

As to Nurse Arnold, Amos alleges that she was the Health Services Administrator and that she engaged in a conspiracy with Jefferson, Willis and Story, and others in the medical department to deny Amos treatment. Arnold allegedly made false statements to cover up the lack of treatment and was improperly allowed to answer grievances filed by Amos.

According to his complaint, the chemical agent continued to burn on Amos's skin and eyes for days due to the lack of running water in his cell; was still buried deep in his right ear; would reactivate in his ear when contacting water while he showered; and caused ongoing injuries in the form of hearing loss and pain in his right ear, impaired vision, and headaches. Amos alleges that Willis and Story merely checked his oxygen level after the sprays; all but one of his subsequent requests for further medical attention were ignored; the nurses made it clear that they would not treat him; the one response he received occurred almost a month later, when a nurse responded to a sick call request and referred him for a doctor's visit; and he had not yet seen the doctor by the time he filed his complaint roughly ninety days later.

Regarding Warden Page and Captain Walker, Amos avers that Page failed to fulfill his responsibilities as warden adequately and that Walker failed to take appropriate action to protect him when he previously made reports about Jefferson's improper conduct toward him. Amos seeks compensatory and punitive damages. The parties consented to proceed before a magistrate judge, who granted summary judgment to defendants based, in part, on qualified immunity. Amos filed a timely notice of appeal.[2] We conclude that the magistrate judge properly granted summary judgment on all claims.

## II

We review a summary judgment de novo, applying the same standards as the district court.[3] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

---

[2] *See Uranga v. Davis*, 893 F.3d 282, 285 (5th Cir. 2018) (recognizing the prison mailbox rule).

[3] *Bourne v. Gunnels*, 921 F.3d 484, 490 (5th Cir. 2019).

movant is entitled to judgment as a matter of law."[4] "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5] "We construe all facts and inferences in the light most favorable to the nonmoving party when reviewing grants of motions for summary judgment."[6] Still, the nonmoving party's version of the facts should not be accepted insofar as it is "blatantly contradicted" by uncontested video evidence in the record.[7] This court "assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene."[8] When video evidence discredits a party's description of the facts, the court need not accept the party's view and should instead consider the facts in the light shown on the video.[9]

## A

As an initial matter, we note that the district court did not err in denying Amos the appointment of counsel. Amos argues in his reply brief and in a motion before this court that he was unable to litigate his case properly because the magistrate judge denied his motions for appointment of counsel.

A district court is not required to appoint counsel for an indigent plaintiff in a civil rights action unless there are "exceptional

---

[4] FED. R. CIV. P. 56(a).

[5] *Sanchez v. Young Cnty.*, 956 F.3d 785, 791 (5th Cir. 2020) (internal quotation marks and citation omitted), *cert. denied*, 141 S. Ct. 901 (2020).

[6] *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005).

[7] *Bourne*, 921 F.3d at 490 (internal quotation marks omitted) (quoting *Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017)); *see Scott v. Harris*, 550 U.S. 372, 378-81 (2007).

[8] *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *accord Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012).

[9] *Newman*, 703 F.3d at 761.

No. 19-40286

circumstances,"[10] and we will not overturn a district court's ruling unless the appellant shows a clear abuse of discretion.[11]    In determining whether exceptional circumstances warrant the appointment of counsel, a district court should consider (1) the type and complexity of the case; (2) the indigent's ability to present the case adequately; (3) the indigent's ability to investigate the case adequately; and (4) the existence of contradictory evidence and the necessity for skill in the presentation of evidence and in cross-examination.[12]

Amos's case does not present exceptional circumstances warranting the appointment of counsel.  His case is not factually complex and hinges largely on video evidence that speaks for itself.  Thus, the district court did not abuse its discretion.  Amos's motion for the appointment of appellate counsel is therefore denied.

Another preliminary matter concerns the magistrate judge's consideration of the video recording.  Amos contends that the court should not have considered the video because the filing in which the video was submitted listed several incorrect defendants and contained an erroneous certificate of service.  However, Amos did not timely object to the video on those grounds before the consideration of summary judgment, and his current challenge to the video is therefore waived.[13]

## B

The magistrate judge properly granted summary judgment in favor of

---

[10] *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982).

[11] *Cupit v. Jones*, 835 F.2d 82, 86 (5th Cir. 1987).

[12] *Ulmer*, 691 F.2d at 213.

[13] *See BGHA, LLC v. City of Universal City*, 340 F.3d 295, 299 (5th Cir. 2003); *McCloud River R.R. Co. v. Sabine River Forest Prods., Inc.*, 735 F.2d 879, 882 (5th Cir. 1984).

Willis, Story, and Arnold on Amos's claims of deliberate indifference to his medical needs. Those claims fail as a matter of law. To state a claim under the Eighth Amendment based on inadequate medical treatment, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."[14] Deliberate indifference is a mental state more blameworthy than negligence, equating to recklessness under criminal law.[15] A prison official acts with deliberate indifference if she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [s]he must also draw the inference."[16] To show deliberate indifference "the prisoner must prove," *inter alia*, "that the officials, despite their actual knowledge of the substantial risk [of serious harm], denied or delayed the prisoner's medical treatment."[17]

There is no genuine dispute of material fact about whether Willis, Story, or Arnold delayed or denied Amos medical treatment. The video evidence establishes that the nurses evaluated Amos after both sprays; measured his oxygen level, found him to be uninjured apart from the normal effects of the chemical agent, and explained to him how to properly decontaminate using the running water available in his cell. Moreover, contrary to Amos's assertion, the video evidence reveals that Amos's cell had running water with which he could decontaminate. The nurses' actions after each spray defeat Amos's claims that he was denied medical

---

[14] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

[15] *Farmer v. Brennan*, 511 U.S. 825, 834-36, 839-40 (1994); *see Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009).

[16] *Farmer*, 511 U.S. at 837.

[17] *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019).

treatment.[18]  The magistrate judge correctly granted summary judgment on Amos's claims of deliberate indifference to his medical needs.[19]

Relatedly, Amos fails to brief his conspiracy claim against Jefferson, Willis, Story, and Arnold, and this claim is therefore abandoned.[20]  Further, Amos makes no argument in opposition to the magistrate judge's disposal of his remaining claims against Arnold concerning the falsification of documents.  The same is true for his claims against Page and Walker concerning their alleged failure to protect him.  Thus, Amos has abandoned these claims as well.[21]

## C

Lastly, because qualified immunity applies, the magistrate judge's grant of summary judgment in favor of Jefferson was also proper.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[22]  "Because qualified immunity is an immunity from suit rather than a mere defense to liability," courts should resolve the issue of qualified immunity "at the earliest possible stage in litigation."[23]

---

[18] *See id.* at 250 ("Under governing precedent, imperfect treatment does not equal denied treatment.").

[19] *See id.* at 250-51.

[20] *See Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008) (recognizing that even pro se litigants must brief arguments in order to maintain them).

[21] *See id.*

[22] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted).

[23] *Id.* at 231-32 (internal quotation marks and citation omitted).

To determine whether a defendant is entitled to qualified immunity, a court considers (1) whether the facts alleged or shown by the plaintiff "make out a violation of a constitutional right," and (2) whether that right was "clearly established at the time of [the] defendant's alleged misconduct."[24] This second prong "turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."[25] Objective reasonableness is a question of law for the court to decide,[26] and a defendant's subjective state of mind is irrelevant to the inquiry.[27] "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what [s]he is doing violates that right."[28]  "A right is clearly established only if relevant precedent 'ha[s] placed the . . . constitutional question beyond debate.'"[29] "The pages of the *United States Reports* teem with warnings about the difficulty of placing a question beyond debate,"[30] and doing so is "especially difficult in excessive-force cases."[31] Qualified immunity applies unless the plaintiff satisfies both prongs, and courts may consider them in any order.[32] Under either prong, courts deciding a motion for summary judgment must

---

[24] *Id.* at 232.

[25] *Id.* at 244 (internal quotation marks and citation omitted).

[26] *Hare v. City of Corinth*, 135 F.3d 320, 328 (5th Cir. 1998).

[27] *Thompson v. Upshur Cnty.*, 245 F.3d 447, 457 (5th Cir. 2001).

[28] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citation omitted).

[29] *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (alteration in original) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

[30] *Id.*

[31] *Id.* at 876.

[32] *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[33]

Amos cannot satisfy the second prong of the qualified immunity analysis. Even when viewed in the light most favorable to him, the video recording shows his ongoing aggressive and disorderly behavior before both the first and second sprays of chemical agent, including physical resistance, expressions of an intent to defy orders, and a threat that he would beat Jefferson and another correctional officer if he were not handcuffed. Before the first spray, which, again, lasted only one to two seconds, Jefferson ordered Amos to face the wall and warned that chemical agent would be administered if he failed to comply. While it is questionable whether officers thereafter guided his body so that his shoulders were perpendicular to the wall while they were reapplying a handcuff, Amos turned his head toward Jefferson entirely of his own volition, which prompted her to spray the chemical agent. Although the video shows Amos turning his head away from Jefferson an instant before the spray, prison officials may be required to "act quickly and decisively" in maintaining order.[34] On multiple occasions, this court has upheld the brief use of chemical agents to maintain or restore discipline or to compel compliance with an order;[35] further, prison officials are "accorded wide-ranging deference in the adoption and execution of

---

[33] *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014); *see Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012).

[34] *Hudson v. McMillian*, 503 U.S. 1, 6 (1992).

[35] *See, e.g., Baldwin v. Stalder*, 137 F.3d 836, 838-41 (5th Cir. 1998); *Woolverton v. Gratz*, 793 F. App'x 341, 342 (5th Cir. 2020) (per curiam); *Kitt v. Bailey*, 676 F. App'x 350, 351 (5th Cir. 2017) (per curiam); *Freeman v. Sims*, 558 F. App'x 412, 413 (5th Cir. 2014) (per curiam); *Scott v. Hanson*, 330 F. App'x 490, 491 (5th Cir. 2009) (per curiam); *Poe v. Tex. Dep't of Crim. Just.*, 306 F. App'x 866, 868 (5th Cir. 2009) (per curiam); *Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (per curiam).

No. 19-40286

policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."[36]

As for the second use of chemical agent, which also lasted one to two seconds, Amos was in violation of an order to remain seated until all officers exited the cell. He was warned that chemical agent would be administered if he did not do so. After both sprays, Amos was promptly taken to the medical department for evaluation.

Under these circumstances, Jefferson's conduct was not objectively unreasonable in light of clearly established law. Even viewing the facts in the light most favorable to Amos, we cannot conclude that every reasonable officer would have known that spraying Amos with a chemical agent after Amos displayed repeated combativeness and belligerence was unlawful. Stated differently, given the context, Jefferson's conduct was objectively reasonable in light of clearly established law concerning the use of brief sprays of chemical agents to maintain or restore discipline or to compel compliance with an order,[37] and the law's recognition that officers often have to "act quickly and decisively."[38] No law put Jefferson on notice that she could not make a split-second decision to administer a brief spray of a chemical agent on a prisoner who continually displayed aggression and hostility and who was either actively defying Jefferson's commands or had been defiant a mere moment before Jefferson took action. Accordingly, qualified immunity shields Jefferson from suit.

---

[36] *Hudson*, 503 U.S. at 6 (internal quotation marks and citation omitted).

[37] *See, e.g., Baldwin*, 137 F.3d at 838-41.

[38] *Hudson*, 503 U.S. at 6.

13

No. 19-40286

\*        \*        \*

Based on the foregoing, we **AFFIRM** summary judgment and **DENY** Amos's motion for appointment of counsel.