# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 14, 2023

Lyle W. Cayce
Clerk

No. 22-30692

Kevin Cobbins,

*Plaintiff—Appellee*,

*versus*

Christopher Sollie,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-155

Before Wiener, Southwick, and Duncan, *Circuit Judges*.

Per Curiam:[*]

The defendant law enforcement officer used a taser on the plaintiff during a traffic stop. The plaintiff brought suit for excessive force under the federal Constitution and for assault and battery under state law. The district court found there to be genuine disputes of material fact preventing summary judgment on the officer's claim of qualified immunity. We agree and AFFIRM.

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30692

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning of March 12, 2020, Kevin Cobbins was driving to his home in Hammond, Louisiana, following a work shift in New Orleans. Cobbins was approaching an exit on Interstate 55 when a Tangipahoa Parish Sheriff's Office ("TPSO") unit activated its lights and siren behind him. Cobbins continued to the exit, stopped at the end of the off-ramp, and turned his car off. The TPSO unit stopped behind him. Two other TPSO units, as well as Defendant-Appellant Christopher Sollie, a Louisiana State Police ("LSP") Trooper, soon arrived at the scene of the stop.

Cobbins alleges he complied with instructions from officers to throw his car keys out of his window and raise his hands. Sollie's dash camera footage confirms that Cobbins held his hands up. Sollie's body camera footage shows the deputies commanded Cobbins to exit his vehicle with his hands up, but Cobbins did not exit his vehicle in response to the commands. Six TPSO officers (all named as co-defendants) then approached Cobbins's vehicle with their weapons drawn. The TPSO officers opened the driver's and passenger's side front doors. They started pulling and pushing Cobbins out of the vehicle.

Sollie, located behind four TPSO officers outside of Cobbins's driver's side door, then stated, "watch out. Taser. Taser." Sollie did not tase Cobbins immediately after making those statements. Instead, the TPSO officers dragged Cobbins out of the car and threw him face-down onto the pavement. The TPSO officers swarmed around and on top of Cobbins. One officer straddled Cobbins's legs, with his weight on Cobbins's back and rear, while other officers leaned into Cobbins's body and pushed him to the ground.

The TPSO officers instructed Cobbins several times to put his hands behind his back so he could be handcuffed. Cobbins concedes he did not

2

comply. Instead, Cobbins repeatedly asked what he had done wrong. Cobbins alleges that one of the TPSO officers punched him hard in the lower torso, but neither Sollie's body camera footage nor his dash camera footage confirms this. Sollie then stated, "Taser. Taser. Watch out. Taser." Sollie then delivered a single, brief taser stun to Cobbins's back, resulting in Cobbins finally placing his hands behind his back.

Cobbins alleges no other use of force by Sollie. As the magistrate judge found in the Report and Recommendation, which the district court adopted, "[t]he parties agree that the only use of force by Sollie, the only LSP Defendant present at the scene, was when Sollie tasered" Cobbins.

Hours after Cobbins's arrest, Sollie filed a Use of Force Report stating the following:

- the "reason for violator contact" was "traffic stop" and the severity of the crime/violation was "misdemeanor;"
- Cobbins was not "an immediate threat to the safety of any officer(s)/others;"
- Cobbins did not "actively resist arrest/seizure by force;"
- Cobbins did not "attempt to evade arrest/seizure by flight;" and
- Cobbins was not armed.

Cobbins was ultimately charged with "Improper Lane Usage" under Title 32, Section 79 of the Louisiana Revised Statutes. The bill of information filed against Cobbins on April 29, 2020, alleged that Cobbins, "being a driver of a vehicle upon a roadway designated for one-way traffic, did fail to drive said vehicle as nearly as practicable entirely within a single lane and did move from such lane before ascertaining that such movement could be made with safety." The violation of this provision is a misdemeanor. La. R.S. 32:57(A).

No. 22-30692

Cobbins filed an action under 42 U.S.C. § 1983 and Louisiana state law on March 12, 2021. He filed a First Amended Complaint on June 9, 2021. Sollie and five LSP supervisors named as defendants moved for summary judgment on September 16, 2021. The magistrate judge issued a Report and Recommendation on September 1, 2022, recommending that the motion for summary judgment be denied. The district court issued an order dated September 23, 2022, denying the motion for summary judgment for the reasons stated in the Report and Recommendation. The order denied Sollie qualified immunity against Cobbins's Section 1983 claim alleging use of force and denied summary judgment on the related state law claims of assault and battery. Sollie filed a timely Notice of Interlocutory Appeal on October 21, 2022.

On October 17, 2022, after the district court's ruling on the motion for summary judgment, Cobbins was convicted in a Louisiana state court for improper lane usage, possession of marijuana, and resisting an officer during the relevant arrest in violation of Title 14, Section 108 of the Louisiana Revised Statutes.

## DISCUSSION

The applicability of qualified immunity is to be resolved at the earliest possible stage in litigation. *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). Officer Sollie did not move to dismiss. Instead, he filed a motion for summary judgment and included arguments about qualified immunity. The Supreme Court has explained that qualified immunity is "to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted). A district court that requires as a matter of course that qualified immunity be determined only at summary judgment, or that discovery always occur first, is not following our precedent. The only evidence here, though, is that the defendant chose this course. Further, there does not

4

appear to have been formal discovery, only disclosures, prior to the district court's decision. At times, of course, there may be fact questions such that the issue cannot be decided on the pleadings. We leave the discussion of procedure and move to the merits of the decision.

On appeal from a district court's denial of summary judgment premised on qualified immunity, we "review[] materiality and legal conclusions *de novo*." *Amador v. Vasquez*, 961 F.3d 721, 727 (5th Cir. 2020). "Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true." *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 364 (5th Cir. 2007) (quotation marks and citation omitted).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Factual disputes are material if they "might affect the outcome of the suit under the governing law," and they are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where, as here, an individual defendant asserts qualified immunity, plaintiffs "must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Vann v. City of Southaven*, 884 F.3d 307, 309 (5th Cir. 2018) (quotation marks and citation omitted).

On appeal, Sollie challenges the district court's denial of qualified immunity as to Cobbins's federal excessive force claim and denial of summary judgment on Cobbins's battery and assault claims under Louisiana law.

Cobbins asserts we lack jurisdiction over this interlocutory appeal. We begin with the threshold jurisdictional argument.

### I.　　*Jurisdiction*

Cobbins argues we must dismiss this appeal for lack of jurisdiction. "Ordinarily, we do not have jurisdiction to review a denial of a summary judgment motion because such a decision is not final within the meaning of 28 U.S.C. § 1291." *Palmer v. Johnson*, 193 F.3d 346, 350 (5th Cir. 1999). "However, the denial of qualified immunity on a motion for summary judgment is immediately appealable if it is based on a conclusion of law." *Perniciaro v. Lea*, 901 F.3d 241, 250 (5th Cir. 2018) (quotation marks and citations omitted).

The district court here, in denying qualified immunity, concluded that two Fifth Circuit opinions clearly established that Sollie's use of his taser against Cobbins was unconstitutional. We will discuss those decisions later. Among Sollie's arguments here is that those opinions do not create the "clearly established law" that a plaintiff must prove to defeat a defense of qualified immunity. The scope of "clearly established law" is a legal issue this court reviews *de novo*. *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001). Therefore, we have jurisdiction to hear the legal issues raised about those opinions.

Cobbins insists we lack jurisdiction over the appeal of the district court's denial of summary judgment on Cobbins's Louisiana claim for assault and battery. The doctrine of pendent appellate jurisdiction is "carefully circumscribed" to the following situations:

> (1) the court will decide some issue in the properly brought interlocutory appeal that necessarily disposes of the pendent claim; (2) addressing the pendent claim will further the purpose of officer-immunities by helping the officer avoid trial; (3) the pendent claim would be otherwise unreviewable; or (4) the claims involve precisely the same facts and elements.

*Escobar v. Montee*, 895 F.3d 387, 391–93 (5th Cir. 2018) (footnotes omitted). Sollie's briefs here do not explain how the Louisiana assault and battery claim fits into any of these categories. We conclude we should not accept review of the state law claims, and the appeal on those issues is dismissed.

## II.    *Qualified immunity as to excessive force*

Sollie contends the district court erred in denying him qualified immunity as to his Section 1983 claim for excessive force. "Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right." *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003). The test for qualified immunity involves two steps: "first we ask whether the officer's alleged conduct has violated a federal right"; "second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quotation marks and citation omitted).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589–90 (2018) (quotation marks and citations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590. The Supreme Court has clarified that its "'clearly established' standard also requires that the legal principle clearly prohibit the officer's conduct in the *particular* circumstances before him." *Id.* at 590 (emphasis added).

The Supreme Court has also stated, though, that cases involving "fundamentally similar facts" are not always necessary to provide the "fair

warning" that officers require. *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002). "'[A] general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question.'" *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (quoting *Hope*, 536 U.S. at 741).

We consider the following factors to assess whether a particular use of force is excessive in violation of the Fourth Amendment: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance. However, officers must assess not only the need for force, but also the relationship between the need and the amount of force used." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quotation marks and citations omitted).

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

Sollie does not challenge the district court's finding that genuine fact disputes exist as to the first factor for qualified immunity — did Sollie's conduct violate Cobbins's constitutional rights? We therefore focus our analysis

only on the second factor — was the alleged right that Cobbins argues was violated clearly established?

The district court determined, "[i]t is clearly established that use of a taser against an arrestee who (1) was stopped for a minor traffic violation; (2) was not an immediate threat or flight risk; and (3) displayed only passive[] resistance, including asking what he had done wrong, is excessive force." We examine the two precedents in which this clarity was found.

In one of the precedents, an officer stopped a driver for a traffic violation and requested that he produce a driver's license and proof of insurance. *Hanks v. Rogers*, 853 F.3d 738, 741 (5th Cir. 2017). After the driver was unable to locate the insurance card, the officer instructed him to exit the vehicle. *Id.* at 741–42. After an argument in which the officer repeated his instruction six times, the driver eventually complied and walked to the rear of his vehicle, placed his hands on the trunk, and then put his hands behind his head. *Id.* at 742. The officer then commanded the driver to "go to [his] knees," and in response the driver asked, "for what?" *Id.* The officer did not respond and instead repeated his command twice. *Id.* The driver asked whether he was under arrest, to which the officer responded by repeating his command again. *Id.* The driver then made a "small lateral step" with his hands still behind his back. *Id.* The officer then used a "half spear" blow against the driver's upper back/neck, knocking him onto the car and then to the ground. *Id.* at 743.

We held that federal law clearly established that where "an individual stopped for a minor traffic offense offers, at most, passive resistance and presents no threat or flight risk, abrupt application of physical force rather than continued verbal negotiating (which may include threats of force) is clearly unreasonable and excessive." *Id.* at 748. *Hanks* makes clear that mere failure

or refusal to obey an officer's command is passive, not active, resistance. *Id.* at 742, 746; *see also Deville*, 567 F.3d at 167–68.

It is immaterial that the officer in *Hanks* did not use a taser: "the '[l]awfulness of force . . . does not depend on the precise instrument used to apply it.'" *Timpa v. Dillard*, 20 F.4th 1020, 1035 (5th Cir. 2021) (quoting *Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012)). Indeed, a fact-finder quite likely would find that use of a taser is an escalation in force from what occurred in *Hanks*. A jury could find that Cobbins's response to the officers' orders was, at most, passive: a failure to immediately exit the vehicle and a failure to immediately put his hands behind his back while pinned by numerous officers to the ground. As Sollie recognized in his Use of Force Report, Cobbins did not "resist arrest/seizure by force" and did not "attempt to evade arrest/seizure by flight." And as the district court found from the camera footage, "Plaintiff's hands are not completely visible while he is pinned to the ground, so it is unclear if he actively resisted or whether he was effectively prevented from complying because he was pinned on the ground."

In the other precedent on which the district court relied, law enforcement officers conducted a no-knock entry into a house. *See Darden v. City of Fort Worth*, 880 F.3d 722, 725 (5th Cir. 2018). An officer threw one occupant, Darden, to the floor, tased him twice as he struggled to breathe, choked him, punched and kicked him in the face, pushed him into a face-down position with his face and neck pressed against the floor, and handcuffed him as his body went limp. *Id.* at 725–26. Darden died from those injuries. *Id.* The court further stated the officers' body camera footage demonstrated "that Darden raised his hands when the officers entered the residence, and it appears that he rolled over onto his face at one point after the officers instructed him to do so." *Id.* at 730. Additionally, eyewitness testimony revealed "that Darden was thrown to the ground before he could react, that he complied with the officers' commands, and that he did not resist arrest." *Id.*

No. 22-30692

"We have previously suggested that a constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest," and therefore,

> if a jury finds that Darden was not actively resisting arrest, then a jury could likewise conclude that Officer Snow used excessive force by throwing Darden to the ground and tasing him twice. The facts the plaintiff has alleged therefore make out a violation of a constitutional right.

*Id.* at 731 (citing *Ramirez v. Martinez*, 716 F.3d 369, 377–78 (5th Cir. 2013); *Newman*, 703 F.3d at 762–63; *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008)). Importantly, *Darden* found that qualified immunity was not available to defeat an excessive force claim where the plaintiff did not resist by flight or force, and was thrown to the ground, punched, pushed into a face-down position with his body pressed into the ground, and tased. *Id.* at 731–32. The facts of the present situation are similar to those of *Darden*.

Sollie relies on a later precedent in which the court found *Darden* to be "cited by every tasing plaintiff who sues under § 1983 in our circuit" but is an "extreme example[] that do[es] nothing to clearly establish the law for less-extreme tasings like Henderson's." *See Henderson v. Harris Cnty.*, 51 F.4th 125, 134 (5th Cir. 2022). Perhaps *Darden* is cited too much, but we have explained why it must be cited here. In *Henderson*, though, officers discovered Henderson breaking up marijuana into a shoebox. *Id.* at 128. Henderson then fled, and one of the officers, Garduno, caught up to him. *Id.* at 128–29. The court summarized the facts leading up to the tasing as follows:

> Garduno made the split-second decision to deploy his taser after Henderson had led him on a long chase by car and by foot and was still unrestrained. Henderson admits he suddenly stopped running, turned toward Garduno, and moved his arms in a manner that suggested to Garduno that Henderson was reaching for a weapon.

11

*Id.* at 135. Based on these facts, the court stated, "a suspect cannot refuse to surrender and instead lead police on a dangerous hot pursuit — and then turn around, appear to surrender, and receive the same Fourth Amendment protection from intermediate force he would have received had he promptly surrendered in the first place." *Id.* (quotation marks and citation omitted).

Cobbins, unlike Henderson, did not lead Sollie on a "dangerous hot pursuit" during a "long chase." Cobbins, unlike Henderson, was not "unrestrained" and did not "move his arms in a manner that suggested" he was reaching for a weapon. The only similarity between *Henderson* and this case is the use of a taser.

In addition to *Darden*, we have reversed the grant of qualified immunity to officers in several other cases involving excessive force with tasers. *See, e.g., Ramirez,* 716 F.3d at 379 (tasing a restrained, subdued subject in prone position); *Newman,* 703 F.3d at 764 (tasing a subdued subject); *Anderson v. McCaleb,* 480 F. App'x 768, 773 (5th Cir. 2012) (tasing a subject who was no longer resisting); *Massey v. Wharton,* 477 F. App'x 256, 263 (5th Cir. 2012) (tasing a subject who was not resisting, was not a threat to the officers or others, and was not attempting to flee); *Autin v. City of Baytown,* 174 F. App'x 183, 186 (5th Cir. 2005) (tasing a subdued subject who was not resisting).

This precedent makes it clear to all reasonable officers that tasing a subject who is suspected of no more than a misdemeanor, is pinned to the ground, is surrounded by law enforcement officers and unable to escape, is unarmed, and is offering no more than passive resistance, amounts to excessive force in violation of the Fourth Amendment. The district court did not err in denying qualified immunity as to the excessive force claim.

The appeal from the denial of summary judgment on the state law claims is DISMISSED. The denial of summary judgment as to the federal claims is AFFIRMED.