# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-50521

United States Court of Appeals
Fifth Circuit

**FILED**
August 11, 2014

Lyle W. Cayce
Clerk

CARLOS CHACON,

Plaintiff – Appellee

v.

OFFICER ERIC COPELAND; OFFICER RUSSELL ROSE,

Defendants – Appellants

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:12-CV-226

Before STEWART, Chief Judge, and GARZA and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Officers Eric Copeland and Russell Rose sought summary judgment on the basis of qualified immunity in an action brought by Carlos Chacon under 42 U.S.C. § 1983. Chacon's suit alleges that Officers Copeland and Rose used excessive force in arresting him. The district court denied the officers' motion for summary judgment. Officers Copeland and Rose filed an interlocutory appeal. We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50521

## FACTS AND PROCEDURAL HISTORY

Carlos Chacon, the plaintiff, testified in a deposition as to the following events on April 29, 2011.  After working out late at a gym in Austin, Texas, then cleaning up and having supper, Carlos Chacon searched for a massage service on the internet.  Finding one, he called the telephone number and scheduled an appointment for that night.  The woman who answered the call told him she was a masseuse, that a massage would cost $75, and asked Chacon to go to her location behind a restaurant.  He said he thought it would be a business location.  Once driving to where he had been directed, he saw a motel but no sign of any other business.  Chacon called again and was told to go to a specific room at the motel.  Though suspicious, Chacon said he was willing to give the ostensible masseuse the benefit of the doubt.  He arrived at the motel room, paid the woman $75, but she made it clear that sexual services were what she planned on providing.  He told the woman that her behavior was wrong and illegal.  Chacon said he would call the police to report her.  During this discussion, a man began kicking the motel room door and yelling at him that the police were there and going to tow his car unless he moved it.

Chacon left the room and found the motel manager and on-site security guard in order to tell them about the problem.  When they were reluctant to help him, Chacon told the two that he was going to call 911 himself and made his first of two such calls.  Chacon testified that as he called, the man who had been kicking the door reappeared and threatened to kill him, reaching into his shorts as if to grab a gun.  Chacon then ran to his car, got inside, and began driving for his own safety.  From his car, Chacon initiated a second 911 call to report the incident.

Recordings of the calls to police show that the first call was about five minutes long and ended abruptly.  The second call began with Chacon's telling the operator that his first call had been disconnected.  The next call also lasted

2

about five minutes. In both calls, Chacon identified himself as Carlos *Chavez* and provided the operator with his location at the motel.[1] He explained to the operator that he tried to get a massage but encountered difficulties with the masseuse, another man, and the motel security officer. Chacon also reported a man was walking around the motel with a gun, that he had waved the gun at Chacon, and that he had tried to shoot him as Chacon drove his car in the motel parking lot.

During the call, Chacon described the man with the gun as an African American male wearing a white shirt, black hat, and black shorts. He described other persons he believed were involved with the man including a Hispanic male in an orange shirt and a woman wearing what appeared to be a blue security uniform, which Chacon believed to be fake. Chacon indicated he was driving a silver BMW around the motel parking lot.

As a result of the calls, two Austin Police Department officers, Officers Copeland and Rose, were dispatched. Because a gun had been reported, Chacon's call was categorized as a "hot shot" call. Both officers drove to the scene with their lights and sirens running, which activated their dashboard cameras and microphones. The district court found that the sound on the videos from each patrol car confirmed the radio dispatcher at least twice stated that the report was of an African American male in a white shirt and black shorts carrying a gun and the complainant was driving a silver BMW.

Officer Rose arrived on the scene first and encountered a group of four people near the motel manager's office: a woman in a security uniform, a Hispanic male in an orange shirt, a Caucasian woman, and an African American male in black shorts and a white shirt, later identified as John

---

[1] Chacon testified that he used the Chavez name because the operator would find it simpler to spell, and he did not want to slow down the police response.

No. 13-50521

Green. Notwithstanding the reports he just received, Officer Rose, when flagged down by the African American male and the woman in the security guard uniform, asked if either had called about a gun. The African American male, Green, responded that no one had called about a gun and explained that a drunk man came to his room, refused to leave, and was now circling the parking lot in a BMW. One of the women present added that she saw the driver on his phone and she suggested that he was the one who called about the gun. She then claimed that Green called 911 as well. Green then agreed that he had called the police. The district court noted that the record contains no evidence of calls other than the two made by Chacon.

In the midst of Officer Rose's conversation with the group, Chacon's BMW came into view. Green pointed it out as containing the drunk man. The district court found that as "Chacon slowly approached in his vehicle, Officer Rose immediately drew his gun and pointed it at Chacon." The district court noted that Officer Rose "never identified himself as an Austin Police Department officer or any other law enforcement official, and laced nearly every statement with profanity." While pointing a flashlight as well as his patrol car's headlights at Chacon, Officer Rose told Chacon to stop the car and show his hands. The district court found that Chacon "immediately responded, 'I don't have a gun, he's the one,' presumably referencing Green." Officer Copeland, having just arrived at the scene, drew his gun and joined Officer Rose as they approached Chacon's car. Officer Rose instructed Chacon to put his hands out the window. Chacon initially reached his hands out the window as instructed, but then withdrew them. The district court found that Chacon put his hands back in the car "allegedly to put the car in park."

Officers Copeland and Rose grabbed Chacon as he opened his car door and ordered him to get out. As the district court characterized the incident, "Chacon calmly explained, yet again, he did not have a gun, while Officer Rose

4

continued to yell at him to get on the ground." Officer Rose "followed immediately, before Chacon could possibly have complied, [with] a new order to 'not move.' Chacon replied calmly, 'I'm not moving.'" Officer Rose looked into Chacon's car and did not see a gun. When Chacon then asked Officer Rose if he was a police officer, Officer Rose replied, "you're damn right I am."

Officer Rose tried to handcuff Chacon. The district court determined that Chacon tried to pull away from Rose, and "a scuffle broke out between the three men, with both officers (who are much smaller than Chacon) struggling to take Chacon to the ground." The district court noted that Chacon "never appeared to swing at either officer, nor did he appear to be interested in fleeing," but described the interaction as "a true struggle" where "Chacon spins around and shoves one of the officers off of him."

The district court explained what occurred next this way:

> Chacon testified he was attempting to lower himself to the ground slowly and safely, and was concerned the officers were going to throw him to the ground and injure him. Once Chacon was down but apparently still resisting the handcuffs, Officer Copeland punched him twice in the face in an attempt to subdue him. The officers continued to struggle with Chacon's arms and at one point instructed Chacon not to reach for one of the officers' weapons.

At some point in the incident, Chacon was on his back on the ground. After securing a handcuff on one wrist, the officers tried to turn Chacon on his stomach to secure both of his hands behind his back. The district court found that "Chacon continued to resist, and Officer Rose fired his Taser at Chacon." After only one of the two Taser probes seemed to hit Chacon, Officer Rose "administered two short 'drive stuns' from the Taser." Both officers managed to "shock themselves with the Taser wires in the scrum," but the Taser also subdued Chacon. The district court found that Chacon "eventually surrender[ed], exclaiming 'I'm done, I'm done, I'm done.'" The officers

No. 13-50521

handcuffed him and kept him on the pavement until additional police arrived. Chacon was arrested for resisting a search. Following his arrest, an emergency medical team arrived and treated Chacon for a cut above his eye that the district court found was "caused by Officer Copeland's punches." Chacon was taken to the hospital where he received stitches for the cut.

Chacon brought a claim alleging excessive force on the part of Officers Copeland and Rose under 42 U.S.C. § 1983. Officers Copeland and Rose filed a motion for summary judgment on the basis that they were entitled to qualified immunity from Chacon's excessive force claim. The district court denied the motion. It held that Chacon had presented sufficient evidence to raise a dispute of material fact about whether the conduct of Officers Copeland and Rose had violated Chacon's constitutional rights and that such conduct was objectively unreasonable in light of clearly established law.

Officers Copeland and Rose filed this interlocutory appeal from the district court's denial of their motion for summary judgment. The officers contest certain aspects of the district court's version of the events. They assert that the video evidence of the incident is uncontroverted and supports their accounts. They ask this court to review the footage of their encounter with Chacon and analyze the facts in light of the video evidence rather than the district court's findings.

## DISCUSSION

We have jurisdiction to consider an interlocutory appeal from the denial of a motion for summary judgment based upon qualified immunity because "its denial is a collateral order that is immediately reviewable to the extent the denial was based on an issue of law." *Ramirez v. Martinez*, 716 F.3d 369, 373 (5th Cir. 2013). As to factual questions, we have no jurisdiction to review the district court's decision that a genuine issue of fact exists. *Brown v. Strain*, 663 F.3d 245, 248 (5th Cir. 2011). We do, though, have jurisdiction to decide

6

No. 13-50521

whether a particular factual dispute found to exist by the district court is legally material. *See Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012). Within these limitations, we review *de novo* a district court's denial of a motion for summary judgment on the basis of qualified immunity. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

In considering a challenge to a denial of a motion for summary judgment on the basis of qualified immunity, we assume the validity of a plaintiff's version of facts. *Freeman v. Gore*, 483 F.3d 404, 410 (5th Cir. 2007) (citation omitted). A narrow exception to our acceptance of a plaintiff's evidence on summary judgment is if video evidence undeniably contradicts the plaintiff's version of the facts such that no reasonable jury could believe it. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Officers Copeland and Rose contend that uncontroverted video evidence shows that the actions taken against Chacon were reasonable as a matter of law in light of the circumstances presented. We consider the available video evidence.

*I. Video Evidence*

Two decisions guide our consideration of the video evidence: *Scott v. Harris*, 550 U.S. 372 (2007), and *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013). The Supreme Court concluded that, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott,* 550 U.S. at 380. We then stated only the obvious by noting that video evidence is not a source of uncontroverted fact if "[t]he contents of the video are too uncertain to discount [the plaintiff's] version of the events under *Scott.*" *Ramirez*, 716 F.3d at 374.

7

We have reviewed the videos. We agree with the district court that they do not clearly reveal the officers' version of events to be correct. The videos were taken by dashboard-mounted cameras inside the two police cruisers. The video footage began when Officer Copeland and Officer Rose each activated the emergency lights and sirens in their cruisers. It includes Officer Rose's arrival and Officer Copeland's slightly later arrival at the motel, the discussion between Officer Rose and bystanders, the approach of Chacon's BMW, the interaction among Chacon, Officer Copeland, and Officer Rose, the later arrival of additional officers, and the continued work at the scene up to the departure of law enforcement.

The vantage point of each officer's dashboard-mounted cameras, relative to Chacon's car and the interaction between the law enforcement officers and Chacon, is too distant to depict several of the key actions with clarity. The recorded statements by Officers Copeland and Rose and by Chacon are incomplete. The visual record of the interaction is equally incomplete, frustrated by the dark of night, the glare of headlights, and a dropped flashlight's beam that obscures the video during a significant portion of the altercation. Combined, these limitations leave some circumstances ambiguous, well short of the clarity necessary to conclude that Chacon's allegations can be blatantly contradicted by the video evidence. Some aspects of the fact-based disputes might still be resolved with the aid of video evidence, but reliance solely on the video would be "too uncertain to discount [the plaintiff's] version of the events under *Scott*." *Ramirez*, 716 F.3d at 374.

## II. *The District Court's Denial of Qualified Immunity*

We next consider whether the district court erred in finding that Chacon raised a dispute of material fact as to whether the officers violated his constitutional rights and that their actions were objectively unreasonable in

light of clearly established law such that qualified immunity is inappropriate. As noted already, our analysis is guided by the "axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014).

"Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *See Brumfield v. Hollins*, 551 F. 3d 322, 326 (5th Cir. 2008). Qualified immunity involves two considerations: (1) whether the public official's conduct violated an actual constitutional right based on the facts alleged, and (2) whether the public official's actions were objectively unreasonable in light of clearly established law at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 232-36 (2009). Key to the second consideration is whether the law at the time of the incident provided "fair warning" to the officers "that their alleged [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). We analyze both *Saucier* considerations from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . ." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Even so, we view all evidence "in the light most favorable" to Chacon, as the nonmoving party. *Tolan*, 134 S. Ct. at 1863.

In ruling on the officers' motion for summary judgment, the district court's task was to determine whether a dispute of material fact exists, such that a grant of qualified immunity would be inappropriate. At times, the district court seemingly resolved these disputes by rendering its own factual findings. As we have already discussed, a court should "not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Because Federal Rule of Civil Procedure 56 does not allow the district

court to make findings of fact from disputed evidence when denying a motion for summary judgment, we construe the district court's ruling to be that, when viewed in a light most favorable to the nonmovant, the ultimate fact-finder could make such findings. Regardless, as we have stated, the factual characterizations by the district court do not affect our *de novo* review.

On that basis, we agree with the district court's conclusion that "Chacon has produced sufficient evidence to survive the Officer Defendants' motion for summary judgment" because disputes of material fact exist. Resolution of the disputes is for the ultimate trier of fact.

### a. *Violation of Chacon's constitutional rights*

In considering whether the police violated an actual constitutional right, the district court correctly considered the three factors articulated in *Graham*, 490 U.S. at 396, to find a dispute of material fact. These factors are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight . . . ." *Id.*

#### i. *First* Graham *factor*

We first consider whether a dispute of material fact exists as to the first factor in *Graham*, the severity of the relevant crime.

Officers Copeland and Rose contend that the "district court engaged in improper post-hoc scrutiny when it criticized [them] for relying on the 'obviously self-serving' statement of Green" when he accused Chacon of being "intoxicated, involved in a disturbance at the hotel, and persistently driving around the area." They assert it was reasonable for them to rely on Green's allegations about Chacon in forming "the suspicion that Chacon was involved in potentially serious criminal activity." They further claim they "did not know

the identity of the caller or the precise nature of the complaint" when they arrived at the scene, only that it was a "high priority 'hot shot' call."

The district court, in assessing the first *Graham* factor, emphasized the competing accounts before it that gave rise to a dispute of material fact. The officers had been given a clear description of the person alleged to have a gun and had been told the complainant was driving a silver BMW. It has never been asserted that Green, or anyone else, accused Chacon of having a gun. Further, it was Green, not Chacon, that matched the description the dispatcher provided of the perpetrator. Officer Rose, nonetheless, acted on Green's assertions about Chacon by drawing his weapon, pointing it at Chacon, and proceeding toward Chacon's silver BMW as Chacon approached in his vehicle.

We find that the evidence relevant to the first factor in *Graham*, viewed in a light most favorable to Chacon, creates a dispute of material fact as to whether the severity of the crime permitted the use of force against Chacon.

*ii. Second* Graham *factor*

We next consider whether there are material facts in dispute as to the second *Graham* factor, whether Chacon posed an immediate threat.

The officers, on appeal, assert that Chacon "posed an immediate threat to their safety because he repeatedly disobeyed their commands, he actively resisted a search and the application of handcuffs, and both of the Officers suspected he was intoxicated."

Under the second *Graham* factor, the district court determined that the evidence did not clearly support that Chacon posed "an immediate threat to the officers or others" such that a dispute of material fact was absent and qualified immunity was appropriate. As the video evidence does not disclose a complete universe of facts, we agree that there is a dispute of material fact as to the presence of an immediate threat during the encounter.

No. 13-50521

The district court described the sequence of events, construing facts in a light most favorable to Chacon, and found that a trier of fact could conclude that there was neither a justifiable fear of Chacon's possession of a gun nor suspicion that Chacon was intoxicated. Chacon stopped his car, put his hands out the window, and stated, "I don't have a gun." At some point, Chacon retracted his hands, "which he claims was to put the car in park and turn off the ignition." Chacon retracted his hands only once it was clear the officers wanted Chacon to exit his vehicle. When Chacon exited his car at Officer Rose's demand, Officer Rose looked into Chacon's car and did not see a gun.

Considering the events after Chacon exited his car, the district court correctly considered that a struggle broke out and that Chacon "sp[un] around and shove[d] one of the officers off of him." These events might more properly be considered under the third *Graham* factor, but we will address them here. The court noted that it was "undisputed Chacon never swung, kicked, or attacked the officers in any way." The seriousness of Chacon's shove, and whether a finder of fact could conclude that the shove was not active resistance, or was disproportionately minor in relation to the severity of force used by the officers, were fact questions not resolvable by the video and properly put to a trier of fact. As a result, the district court did not err in concluding a dispute of material fact exists as to whether Chacon's actions give rise to an immediate threat such that the officers' force was appropriate.

Further, the argument that Chacon was a threat because he disobeyed the officers' orders ignores that he was issued contradictory demands, being told to "not move," to "get on the ground," to "stop moving," and to "turn over." The argument that Chacon disobeyed them could be seen by a fact-finder as "severely overwrought." *Newman*, 703 F.3d at 762.

The officers also emphasize that Chacon was a "former competitive bodybuilder who is significantly larger" than they are. While it is unclear when

the officers would have become aware of Chacon's build, both officers drew their weapons while Chacon was still in his car.

We agree that there is sufficient evidence to create a factual dispute as to whether Chacon posed an immediate threat to the officers and others. The district court did not err in its consideration of the second *Graham* factor.


### iii. Third Graham factor

Under the third *Graham* factor, we must determine whether there is a dispute of material fact concerning whether Chacon actively resisted arrest or attempted to flee, so as to support the officers' actions.

The officers rely on the principle that an arrestee or suspect who refused to comply with officer commands had "posed an immediate threat to the safety of the officers and actively resist[ed] the officers' instructions, [such that] the use of force was not clearly excessive." *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (quotation marks omitted). They argue that the evidence proves Chacon at one point was turning over, reaching for the officers and their equipment, and attempting to "throw[] Rose off of him," all of which justified their responses.

These characterizations, not proven by uncontroverted evidence, do not describe the circumstances "in the light most favorable" to the nonmovant, the perspective we are required to take when considering summary judgment on the basis of qualified immunity. *Tolan*, 134 S. Ct. at 1863.

Like our discussion of Chacon's showing under the second *Graham* factor, it is unclear from the evidence before the district court that Chacon was actively resisting. Even if some action by Chacon demonstrated resistance, the fact question found by the district court remains: whether, even when considering his possible resistance, shoving Chacon to the ground while he attempted to explain himself, punching him in the head while he was on the

ground, or shooting him with a Taser, constituted excessive force.  Police are entitled only to "measured and ascending responses" to the actions of a suspect, "calibrated to physical and verbal resistance" shown by that suspect.  *Newman*, 703 F.3d at 767 (citation omitted).

The district court did not err in concluding that a dispute of material fact exists as to Chacon's resistance under the third *Graham* factor.  Such a dispute does not counsel in favor of a grant of qualified immunity.

We agree with the district court that a reasonable jury could find the use of force by Officers Copeland and Rose excessive and that Chacon has presented sufficient evidence to create a factual dispute as to whether the officers' use of force violated an actual constitutional right.

### b.  *Reasonableness in light of clearly established law*

Our second consideration in analyzing qualified immunity is whether the officers' actions were unreasonable in light of clearly established law.  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  As the district court correctly noted, the "central concept" of this analysis is "fair warning," which means that a reasonable official would understand the conduct in this case violated the Fourth Amendment. *Newman*, 703 F.3d at 763.  "It is beyond dispute that [Chacon's] right to be free from excessive force during an investigatory stop or arrest was clearly established [at the time of the incident]." *Id*.  Further, the *Graham* factors, themselves, can place an officer on notice that conduct violates clearly established law.  *Id*. at 764 (citing *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).  And, as the district court found and we upheld, there is a dispute of material fact concerning whether the level of force used by Officers Copeland and Rose against Chacon is constitutional under *Graham*.

No. 13-50521

The officers' arguments against a finding that their actions were unreasonable in light of clearly established law are premised on their disputed construction of facts and reliance on the video evidence to support this position. We have already discussed why we agree with the district court that the video evidence is not uncontroverted in supporting the officers' versions of events. From the officers' viewpoint, they simply applied "increasingly harsh force, including Tasers and physical strikes, when faced with struggling or resisting subjects." That argument, though, is necessarily premised on a finding that Chacon was "struggling or resisting," a fact found in dispute by the district court and which we conclude, as a matter of law, to be material.

The district court concluded that disputes of material fact preclude summary judgment for Officers Copeland and Rose. We AFFIRM.

15