# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 15, 2026

Lyle W. Cayce
Clerk

No. 25-50332

James Edward Johnson,

*Plaintiff—Appellant*,

*versus*

Brandon Salter; Samuel Noble; Katherine Alzola; City of Austin, Texas,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:22-CV-1050

_____

Before Haynes, Higginson, and Ho, *Circuit Judges*.

Per Curiam:[*]

James Edward Johnson told his mother, who lived far away, that he was going to commit suicide, so she contacted the City of Austin's 911 dispatching unit and asked if someone could go check on him. Three Austin Police officers reached Johnson's apartment a short time later. Johnson says he suffered injuries to his jaw and head. He then sued the officers and the

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

City of Austin. The district court granted the defendants' motions for summary judgment, concluding that the officers were entitled to qualified immunity and Johnson could not raise a fact issue regarding his claim for municipal liability. Finding no error, we AFFIRM.

## I.     Background

Late one night in August 2021, Johnson's mother called the City of Austin's 911 dispatching unit and explained that her son was "suicidal" and "ha[d] a gun." Johnson had texted his mother that night, saying "It's done, I'm gone for good. One hundred percent," and sent a picture of his gun. Johnson's mother was in California and scared of what her son might do, so she called the police to ask if they could send someone to her son's apartment to check on him. Johnson's mother explained that Johnson "had a rough night"—experiencing problems with his girlfriend, he had been "humiliated." Officers were immediately sent out to check on Johnson.

Shortly thereafter, three Austin Police Officers, Brandon Salter, Samuel Noble, and Katherine Alzola (collectively, the "Officers"), arrived at Johnson's apartment complex. The Officers made their way to Johnson's apartment door, knocked, and announced "Police Department." Johnson quickly responded: "Don't come in or I'm going to shoot myself in the head." After receiving the number from dispatch and attempting to call Johnson's cell phone, Noble went to prop open the apartment complex's doors.

At Noble's direction, Salter began to talk to Johnson through the apartment door. Salter asked Johnson what was going on and stated that he "need[ed] to know that [Johnson] d[id not] have a gun." Johnson, his voice muffled through the door, explained that he did "have one," but stated that he was "not a threat to anybody." Salter told Johnson to make sure that the

gun was not anywhere near him, and Johnson explained that the gun was "on the ground next to [him], but . . . [he was] going to come outside."

Johnson opened his apartment door, showing one hand at a time. Salter and Alzola held their firearms at low ready. Johnson exited his apartment door but stood at the apartment's threshold, propping the door open. Johnson was shirtless, wearing only shorts and socks. After some discussion, Johnson took a step into the hallway, turned toward Salter and Alzola, put his hands up, and said that he was not a threat.

At this time, Noble was making his way back to Johnson's apartment, approaching down the hallway behind Johnson. The Officers told Johnson to get on the ground, but he refused. Instead, he moved back inside his apartment. As Johnson's apartment door was closing, Noble reached the doorway and deployed his taser. Salter followed behind, kicked open the closing door, and Noble again deployed his taser. The Officers again ordered Johnson to get on the ground. They sought to place him under emergency detention, for both his and their safety.

Johnson fell to the floor and crouched against the wall. The Officers entered the dark apartment and ordered Johnson to get on his stomach. Johnson was exclaiming: "I didn't do anything." Salter then kicked Johnson in the side to knock him onto his stomach and again used his foot to force Johnson's chest to the ground. At that point, having holstered her weapon, Alzola announced that she was "going hands."

Alzola knelt down, placing one knee on Johnson, and the Officers ordered Johnson to put his hands behind his back. Alzola began pulling Johnson's hands behind his back. Noble placed his taser on Johnson's left thigh, and Salter put one hand on Johnson's head, pressing the side of his face to the ground. Alzola got Johnson's left wrist in her handcuffs and then

grabbed his right wrist. Johnson continued to state that he was "not a threat" and asked the Officers to "talk to" him.

Before Alzola could handcuff Johnson's right wrist, he pulled his right arm away from her and put his hand under the right side of his chest. Alzola began struggling to pull Johnson's right arm back. Salter then punched Johnson in the jaw area four times, in rapid succession. While Salter was striking Johnson, Noble was repeating "stand clear" and had his taser ready.

After Salter struck Johnson in the jaw, Alzola was able to pull Johnson's arm out from under him, but his arm was still to his side, not behind his back. Noble announced: "Get back. I'm gonna [sic] tase him." Noble then tased Johnson in his right glute (i.e., a "drive stun"), and Alzola was able to pull Johnson's right arm behind him and handcuff his right wrist.

Once Johnson was handcuffed, he contended that he was "bleeding a lot," and Alzola explained that emergency medical services were on the way. Salter explained: "We're trying to help you man, but you, you had a gun; I don't know what you're gonna [sic] do with that." Noble then walked over to Johnson, crouched down, and explained that Johnson was being put under emergency detention. At that time, the Officers noticed Johnson's gun on the floor of his living room, approximately ten feet away from where he was laying on the ground. Alzola picked up the firearm, unloaded it, and placed it on Johnson's coffee table.

Noble and Salter helped Johnson up and walked him out of the apartment complex. An ambulance arrived and began treating Johnson. Johnson contends that he was severely hurt. He received emergency surgery to repair his jaw.

Johnson filed this lawsuit in October 2022, asserting claims under 42 U.S.C. § 1983. Johnson asserts claims against: (1) Salter and Noble for excessive force under the Fourth and Fourteenth Amendments of the United

No. 25-50332

States Constitution for Salter's strikes to Johnson's head and Noble's drive stun; and (2) Salter, Noble, and Alzola for bystander liability under the Fourth and Fourteenth Amendments for failing to intervene during the alleged use of excessive force. He also asserts (3) a *Monell*[1] claim against the City of Austin alleging, *inter alia*, a pattern and practice of failing to discipline officers who fail to intervene and stop the use of excessive force and failing to train that head strikes should be used only when deadly force is necessary.

In August 2024, the City moved for summary judgment. A few days later, the Officers moved for summary judgment as well. The district court granted the Officers' motion because it determined that the Officers were entitled to qualified immunity with respect to both Johnson's excessive force claim and bystander claim. The district court also granted the City's motion because it concluded that Johnson had failed to identify a fact issue regarding any of his theories of municipal liability. Johnson timely appealed.

## II.    Jurisdiction & Standard of Review

We have jurisdiction to consider this appeal under 28 U.S.C. § 1291, as the district court entered final judgment in this case.

We review de novo the district court's grant of summary judgment. *Deville v. Marcantel*, 567 F.3d 156, 163 (5th Cir. 2009) (per curiam). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Though, of course, "we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Houston*, 636

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

F.3d 183, 187 (5th Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

## III.    Discussion

Johnson contends that the district court erred by holding that the Officers are entitled to qualified immunity in all respects—as to Salter's head strikes, Noble's drive stun, and bystander liability. He then asserts that the district court also erred by dismissing his claims against the City because, in his view, material fact disputes remain regarding whether his constitutional rights were violated. In the end, we disagree on both counts. The district court properly granted both the Officers' and the City's motions for summary judgment. We address (A) Johnson's claims against the Officers and then (B) his claim against the City.

### A.    Claims against the Officers

With respect to Johnson's excessive force and bystander claims against the Officers, the district court concluded that the Officers were entitled to qualified immunity. We agree.

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam) (citation omitted). Once a defendant makes a good-faith assertion of qualified immunity, the ordinary summary judgment burden of proof is altered; the burden shifts to the plaintiff to demonstrate that the defense is unavailable. *Id.*

There are two steps in our qualified-immunity inquiry. "A plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Trent v. Wade*, 776 F.3d

368, 377 (5th Cir. 2015) (citation modified). We have discretion to address both or only one of these steps. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). Here, when it comes to Johnson's claims against the Officers, we begin and end with the second step.

At the second step, the plaintiff's burden is quite heavy. *Id.* To satisfy step two, the plaintiff must demonstrate that the law "is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Although the plaintiff need not cite "a case directly on point, . . . existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 12 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

What is more, in this context, "we must frame the constitutional question with specificity and granularity." *Morrow*, 917 F.3d at 874–75. That is, "clearly established law should not be defined at a high level of generality," but instead it "must be particularized to the facts of the case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation modified). "In other words, outside of an obvious case, the law is only clearly established if a prior case exists where an officer acting under similar circumstances was held to have violated the Fourth Amendment." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (citation modified).

Without needing to decide whether the Officers' conduct constituted a constitutional violation, we conclude below that the law was not clearly established at the time of the Officers' conduct. We address below (1) Salter's head strikes, (2) Noble's drive stun, and (3) bystander liability.

### 1.   *Salter's head strikes*

When it comes to Salter's head strikes, Johnson contends that his "right to be free from the excessive force of Salter's head strikes was clearly

No. 25-50332

established," and he points to multiple of our prior cases[2] that, in his view, place this issue beyond debate.[3] The Officers, however, argue that the district court properly distinguished the authorities Johnson relies on because these cases primarily involved facts where there were no allegations that the suspect posed an immediate threat to officers' safety. The question here is whether the authority Johnson relies on accounts for these circumstances, as it "must be particularized to the facts of the case." *White*, 580 U.S. at 79 (citation modified). We agree with the Officers. Johnson's cited authority is readily distinguishable.

We start with Johnson's chief authority. The primary case on which Johnson relies is *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319 (5th Cir. 2020). In *Joseph*, officers physically struck Joseph twenty-six times all over his body and tased him twice. *Id.* at 326–27. During the use of force, the plaintiff was not actively resisting and was lying in the fetal position. *Id.* at 336. Furthermore, the plaintiff did not make any threatening movements, and

---

[2] Johnson also points to a few of our cases that are unpublished. *See Scott v. White*, 810 F. App'x 297, 299 (5th Cir. 2020) (per curiam); *Chacon v. Copeland*, 577 F. App'x 355, 362 (5th Cir. 2014) (per curiam); *Brown v. Lynch*, 524 F. App'x 69, 81 (5th Cir. 2013) (per curiam). But "[b]ecause nonprecedential opinions do not establish any binding law for the circuit, they cannot be the source of clearly established law for qualified immunity analysis." *Salazar v. Molina*, 37 F.4th 278, 286 (5th Cir. 2022) (citation omitted).

[3] Johnson asserts that his right to be free from the excessive force of Salter's head strikes was also clearly established because this is an obvious case. "'[I]n an obvious case,' the *Graham* [*v. Connor*, 490 U.S. 386, 397 (1989)] excessive-force factors themselves 'can clearly establish the answer [to whether the right was clearly established], even without a body of relevant case law.'" *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). That is the case where "[n]one of the *Graham* factors justifies" the force used. *Id.* But this is far from an obvious case. Just to name one of the *Graham* factors, Johnson is unable to demonstrate that he "did not resist" or complied with all of the Officers' commands. *Id.* Rather, the record demonstrates that Johnson was on the floor and did not comply with the Officers' repeated instruction to keep his hands behind his back while Alzola attempted to place handcuffs on him for the purpose of emergency detention.

there was no indication that he possessed a firearm or that there was one near him. *Id.* at 326. Here, Johnson had retreated into his dark apartment, disobeyed numerous of the Officers' commands, and pulled his arm away while being handcuffed, all while the location of Johnson's firearm was unknown. Our decision in *Joseph* is not sufficiently analogous to have put Salter on notice that his conduct was unlawful.

The other cases Johnson cites also present distinct factual situations and do not demonstrate that Salter's conduct violated clearly established law. *See, e.g.*, *Darden v. City of Fort Worth*, 880 F.3d 722, 725, 730–33 (5th Cir. 2018) (involving, *inter alia*, an individual who had *not* threatened suicide and who, evidence demonstrated, was following instructions when officers engaged in excessive force); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (similar); *see also Bailey v. Ramos*, 125 F.4th 667, 682–83 (5th Cir. 2025) (distinguishing *Darden* and noting that "*Bush* does not clearly establish that use of takedown procedures is unlawful when law enforcement hasn't yet gained control of the suspect"), *reh'g denied*, No. 23-50185 (5th Cir. Feb. 10, 2025). For example, in *Newman v. Guedry*, after a passenger in a stopped car made an off-color joke during a pat-down, officers severely beat and tased the passenger. 703 F.3d 757, 760 (5th Cir. 2012). There was no evidence that the passenger failed to comply with the officers' commands before officers began to strike and tase him. *Id.* That is not the case here. Further, in *Hanks*, we held "that an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." 853 F.3d at 747; *see also id.* at 746 ("Hanks did not turn his body or move his hands, which remained folded behind his back and plainly visible to Officer Rogers."). Like *Newman*, *Hanks* does not closely resemble the

circumstances at issue here.[4] Then, in *Trammell v. Fruge*, we held that it was "clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." 868 F.3d 332, 343 (5th Cir. 2017). But, unlike this case, there was no indication that the plaintiff was suicidal and had a gun somewhere near him.

All told, the circumstances presented in the cases Johnson relies on, "unlike an attempt to restrain . . . a suicidal individual, do[] not carry with [them] the same inherent danger or risk to human life." *Cambre v. Gottardi*, No. 19-30715, 2025 WL 1304592, at *8 (5th Cir. May 6, 2025) (unpublished).[5] Johnson has failed to satisfy his burden to show that it was clearly established at the time of his arrest that Salter's head strikes were an unlawful use of force. The district court was thus correct to conclude that Salter is entitled to qualified immunity on this claim.

2.    *Noble's drive stun*

As for Noble's drive stun, Johnson argues that our binding precedent put Noble on notice that his final use of the taser was excessive. The Officers, on the other hand, say that the district court correctly held that each of Johnson's cases is distinguishable. We again conclude that Johnson has failed to demonstrate that Noble's conduct violated clearly established law.

---

[4] Throughout his briefing, Johnson characterizes his resistance as "at most" passive, as opposed to active resistance. *See generally Cambre v. Gottardi*, No. 19-30715, 2025 WL 1304592 (5th Cir. May 6, 2025) (unpublished). However, Johnson "has not identified a case that accounts for the unique circumstances present here," notably, a free arm and an unknown gun, to support his claim that his resistance was merely passive. *Id.* at *8.

[5] Although *Cambre* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

No. 25-50332

To start, Johnson again relies on *Joseph*, *Darden*, and *Newman*. Again, those cases are different from this one. Johnson's other cited authority likewise fails to clearly establish that Noble's conduct was unlawful.[6] For example, in *Ramirez v. Martinez*, we denied qualified immunity where officers tased the plaintiff twice, once while he was handcuffed, subdued, and lying face down on the ground, even though he posed no threat to the officers. 716 F.3d 369, 379–80 (5th Cir. 2013). But *Ramirez* is distinct. "Unlike here, Ramirez found deputies at his business and questioned them," and officers did not seek to detain him based on a threat that he would commit suicide. *Salazar v. Molina*, 37 F.4th 278, 287 (5th Cir. 2022) (identifying material distinctions). Further, "unlike here, the officers tased Ramirez even after he was restrained with handcuffs." *Id.*

None of these cases demonstrates that Noble's conduct was clearly unlawful. Indeed, when looking at some of these cases and others like them, the district court acknowledged that a key distinction in those cases is that none of the officers had reason to believe the detainees were unstable, armed, or posed a significant threat. Noble deployed his taser immediately after Salter struck Johnson, while Johnson was still failing to comply with commands and his hand was near his shoulder. All of this occurred within seconds of Johnson pulling his arm away from Alzola. Johnson was suicidal,

---

[6] Yet again, Johnson's citations to our unpublished cases do not provide clearly established law. *See Chacon*, 577 F. App'x at 362; *Cobbins v. Sollie*, No. 22-30692, 2023 WL 4015303, at *6 (5th Cir. June 14, 2023) (per curiam) (unpublished); *Autin v. City of Baytown*, 174 F. App'x 183, 186 (5th Cir. 2005) (per curiam); *Clark v. Massengill*, 641 F. App'x 418, 421 (5th Cir. 2016); *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (per curiam). *See Salazar*, 37 F.4th at 286. On a related note, Johnson's citation to *Peña v. City of Rio Grande City*, 879 F.3d 613, 619–20 (5th Cir. 2018), is futile. Not only are its circumstances quite different, but we also decided that case at the pleading stage and remanded to the district court without resolving issues related to qualified immunity. *Id.* at 621.

repeatedly refused the Officers' commands, and the Officers remained in Johnson's dark apartment all the while knowing that Johnson's gun was somewhere around them. At all times, Noble "faced a 'tense, uncertain, and rapidly evolving' situation."[7] *Ramirez v. Escajeda*, 44 F.4th 287, 294 (5th Cir. 2022) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014)).

Johnson has again failed to satisfy his burden to show that it was clearly established at the time of his arrest that Noble's drive stun constituted an unlawful use of force. The district court correctly concluded that Noble is entitled to qualified immunity on this claim.

### 3.    *Bystander liability*

Johnson next contends that the district court erred by dismissing his bystander claim against Salter and Alzola.[8] The Officers maintain that they are entitled to qualified immunity. Once again, we agree with the Officers.

"An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an

---

[7] Johnson also makes references to a few other cases. In *Roque v. Harvel*, we held that it was clearly established "that an officer violates the Fourth Amendment if he shoots an unarmed, incapacitated suspect who is moving away from everyone present at the scene." 993 F.3d 325, 339 (5th Cir. 2021). In *Cooper v. Brown*, an officer deployed a dog rather than a taser, the plaintiff was "not actively resisting arrest or attempting to flee," and the officer did not order the dog to release the bite until after the plaintiff was handcuffed. 844 F.3d 517, 521, 523–24 (5th Cir. 2016). Then, in *Mason v. Lafayette City-Parish Consolidated Government*, after an officer had shot a suspect five times and the suspect was face down on the ground, the officer—claiming that the suspect made a threatening movement—fired two more shots into the suspect's back. 806 F.3d 268, 273–74 (5th Cir. 2015). But each of these cases present factual circumstances that are wholly distinct from the circumstances surrounding Noble's use of his taser, and, as a result, these cases did not put Noble on notice that his conduct was unlawful.

[8] In his briefing on appeal, Johnson only presses this claim against Salter and Alzola, though he also asserts this claim against Noble in his complaint. Nonetheless, for the same reasons discussed herein, Johnson's bystander claim fails against all the Officers.

individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013) (citation modified). Then, because the Officers have asserted qualified immunity, Johnson is also required to "identify clearly established law requiring an officer" to intervene under similar circumstances. *Id.* at 647 n.13. In other words, Johnson bears the burden to demonstrate that, at the time the conduct at issue took place, "any reasonable officer would have known that the Constitution required them to intervene in this circumstance." *Timpa v. Dillard*, 20 F.4th 1020, 1038–39 (5th Cir. 2021) (citation modified).

Johnson's bystander claim must fail. Where each specific instance of claimed excessive force did not violate clearly established law at the time of its occurrence, a plaintiff is unable to maintain a bystander claim rooted in the same conduct. *Terrell v. Allgrunn*, 114 F.4th 428, 440 (5th Cir. 2024) ("All the specific instances, listed by plaintiffs as points at which Henderson and Banta failed to intervene, were not violations of clearly established constitutional law. That ends the inquiry."), *reh'g denied*, No. 23-30723 (5th Cir. Jan. 7, 2025). That is, because Noble's use of force did not violate clearly established law, Johnson's bystander claim relating to this instance cannot survive.

## B.     Claim against the City

Last, we reach Johnson's claim against the City. The district court concluded that Johnson's *Monell* claim must fail for two reasons. For one, his claim failed because the Officers' force was reasonable. But for another, the district court held that its review of the parties' evidence revealed that Johnson failed to establish municipal liability against the City in any event. Specifically, the district court held that Johnson failed to establish that the City: had a policy or custom of excessive force; inadequately trained its

officers; had a policy of failing to enforce its intervention policy that was also the moving force behind the Officers' conduct; could be liable for its alleged failure to discipline; and was deliberately indifferent in its post-incident conduct.

Because Johnson fails to challenge the district court's alternative justifications for dismissing his claim against the City, we must affirm. Indeed, Johnson addresses none of the district court's alternative grounds for dismissal on appeal. He simply asserts that there are fact issues as to whether his constitutional rights were violated, and, as a result, the district court could not evaluate his *Monell* claim. Not so. The district court addressed the merits of Johnson's *Monell* claim even though it found no underlying constitutional violation.

Johnson has forfeited any arguments regarding this analysis. "A party *forfeits* a claim or argument by failing to raise it at the appropriate time. For example, forfeiture occurs when the party fails . . . to adequately brief it on appeal." *Indigenous Peoples of Coastal Bend v. U. S. Army Corps of Eng'rs*, 132 F.4th 872, 882 (5th Cir. 2025); *United States v. Ogle*, 415 F.3d 382, 383 (5th Cir. 2005) (per curiam) ("[A]n argument not raised in appellant's original brief as required by Fed. R. App. P. 28 is waived."). That is the case here. Further, and in any event, even if we were to consider Johnson's belated arguments on this point, he has failed to demonstrate that the district court's analysis of his *Monell* claim was erroneous. *Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015) ("Arguments raised for the first time in a reply brief are waived.").

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of the Officers' and the City's motions for summary judgment.